Timothy J. Petumenos, ABA #7611147
David Karl Gross, ABA #9611065
Birch Horton Bittner & Cherot
1127 West Seventh Avenue
Anchorage, AK 99501
Telephone: 907.276.1550
Facsimile: 907.276.3680

Attorneys for Plaintiff NORTHWEST COMPANY (INTERNATIONAL), INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHWEST COMPANY (INTERNATIONAL), INC., <br><br> Plaintiff, <br><br> vs. <br><br> HCC LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No.: 3:12-CV-_____ |

# COMPLAINT

COMES NOW Plaintiff, The Northwest Company (International) Inc. ("NWC"), by and through undersigned counsel of record, Birch Horton Bittner & Cherot, and hereby states and alleges as follows:

## PARTIES AND JURISDICTION

1. NWC is a corporation organized under the laws of Delaware, with its principal place of business in Alaska.

2. NWC owns and operates Alaska Commercial Company, also known as ACC Value Centre ("ACC"), which is a retailer targeting underserved rural

communities in Alaska, making NWC a corporate citizen within the State of Alaska for jurisdictional purposes.

3. Defendant HCC Life Insurance Company ("HCC") is an insurance company organized under the laws of the State of Indiana, with its principal place of business in the State of Georgia.

4. HCC is licensed and registered with the Division of Insurance within the State of Alaska Department of Commerce, Community, and Economic Development to sell insurance covering individuals and companies in Alaska.

5. The amount in controversy, as is more fully set forth below, is in excess of $75,000.

6. Pursuant to 28 U.S.C. § 1332, complete diversity of citizenship exists, effectively granting the U.S. District Court for the District of Alaska jurisdiction in this matter.

## FACTUAL ALLEGATIONS

7. NWC has a benefits program in place that provides health insurance coverage to its employees, including certain individuals employed with ACC. This program was funded, in part, by a "stop loss policy" designed to provide excess coverage to the plan.

8. NWC had traditionally carried a "stop loss policy" with policy limits of $2 million with a $100,000 deductible. In other words, the insurance policy purchased by NWC would require that it pay the first $100,000 of any employee's medical claim with the insurer paying anything over $100,000 up to the $2 million policy limit, effectively providing $1.9 million in excess health insurance coverage.

9. For the policy period commencing on January 1, 2011 and concluding on December 31, 2011, NWC again sought to purchase a "stop loss policy" in the amount of $2 million (with a $100,000 deductible and $1.9 million in coverage). NWC completed an application seeking to secure this coverage from HCC. The application specifically stated that the coverage requested was in the amount of $1.9 million. A true and correct copy of the application is attached hereto as Exhibit 1.

10. HCC received the application seeking $1.9 million in coverage, agreed to place the coverage for NWC, and calculated the premiums based on the $1.9 million amount. Thereafter, an insurance policy (number HCL16843) was issued, which specifically incorporated the terms of the application. A true and correct copy of the insurance policy, with the application, is attached hereto as Exhibit 2. When defining the total amount of insurance coverage available, the policy specifically refers to the terms of the application, which sets forth the $1.9 million amount.

11. After the policy had been issued, a separate document called the "Summary Plan Description" was prepared indicating that the maximum benefit amount was $750,000 (a $100,000 deductible and $650,000 in coverage). This document did not alter or change the extent of coverage offered by the policy issued by HCC. However, it did understate the amount of health insurance coverage available to the potential claimants.

12. NWC continued to pay HCC premiums based on the $1.9 million policy limit and the "stop loss policy" for that amount remained in full force and effect.

NORTHWEST COMPANY V. HCC LIFE INSURANCE
COMPLAINT
F:\503936\120\00289735.DOCX
CASE NO. 3:12-CV-_____
PAGE 3 OF 7

Case 3:12-cv-00253-HRH   Document 1   Filed 12/31/12   Page 3 of 7

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

13. In December 2011, the plan administrator noticed the error in the "Summary Plan Description" and sent an email to HCC advising it that the "Summary Plan Description" was going to be amended to reflect the correct amount of the maximum benefit amount. In other words, the plan was going to be amended to increase the maximum plan benefit from $750,000 to $2 million.

14. On January 4, 2012, HCC responded by approving the amendment to the "Summary Plan Description" and indicated that this amendment would be made a part of the policy, such that both the plan and the "stop loss policy" would accurately reflect that the maximum benefit amount of $2 million. HCC indicated that this change would apply retroactively to January 1, 2011, which was the beginning of the policy period.

15. On January 20, 2012, HCC reversed its position by revoking its earlier approval of the plan amendment. HCC now took the position that the plan could not be amended and that the maximum benefit amount would be $750,000. In changing its position, HCC did not offer a refund of the premiums paid on the $2 million "stop loss policy," nor did HCC offer to refund the difference between the premiums paid on a $2 million "stop loss policy" and the premiums paid on a $750,000 "stop loss policy." Instead, HCC charged NWC premiums for a $2 million policy, but stated that it would only provide coverage up to $750,000.

16. During the policy period from January 1, 2011 to December 31, 2011, there was one claimant that had a claim in excess of the $750,000 maximum benefit amount mistakenly set forth on the "Summary Plan Description." Covered medical

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

expenses for this claimant were approximately $1,117,453, which was $367,453 in excess of the $750,000 amount.

17. Because HCC sold NWC a "stop loss policy" with coverage up to $2 million, HCC was obligated to pay the entire claim, since the claim was within the policy limits. However, HCC refused to pay any amount over $750,000, despite being contractually obligated to pay all claims up to $2 million.

## FIRST CAUSE OF ACTION - BREACH OF CONTRACT

18. NWC re-alleges and incorporates by reference all allegations above as if fully set forth herein.

19. HCC was contractually obligated to provide health insurance benefits to any claimant or claimants incurring reasonable and necessary medical expenses in excess of $100,000, not to exceed $2 million.

20. The insurance policy specifically required HCC to pay claims up to $2 million and does not allow HCC to stop paying claims once they reach $750,000.

21. Despite clear contractual language to the contrary, HCC took the position that it could stop paying claims once they reached $750,000.

22. One claimant incurred reasonable and necessary medical expenses in excess of $750,000, but below $2 million. As such, the insurance policy required HCC to pay the entire claim or all amounts above $100,000.

23. HCC refused to pay anything above $750,000, leaving an unpaid amount of approximately $367,453.

24. The failure to pay this claim amounts to a breach of contract causing damages, the exact amount of which will be proven at time of trial.

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

## SECOND CAUSE OF ACTION – BAD FAITH

25. NWC re-alleges and incorporates by reference all allegations above as if fully set forth herein.

26. HCC was contractually obligated to provide health insurance benefits to any claimant or claimants incurring reasonable and necessary medical expenses in excess of $100,000, not to exceed $2 million.

27. The insurance policy specifically required HCC to pay claims up to $2 million and does not allow HCC to stop paying claims once they reach $750,000.

28. Despite clear contractual language to the contrary, HCC took the position that it could stop paying claims once they reached $750,000.

29. One claimant incurred reasonable and necessary medical expenses in excess of $750,000, but below $2 million. As such, the insurance policy required HCC to pay the entire claim.

30. HCC refused to pay anything above $750,000, leaving an unpaid amount of approximately $367,453.

31. The failure to pay this claim amounts to a breach of the implied-in-law covenant of good faith and fair dealing causing damages, the exact amount of which will be proven at time of trial.

## PRAYER FOR RELIEF

WHEREFORE, NWC accordingly prays for the following relief:

1. A judgment to be entered for compensatory damages;

2. The award of punitive damages to punish HCC and to deter others similarly situated from engaging in similar acts in the future;

NORTHWEST COMPANY V. HCC LIFE INSURANCE
COMPLAINT
F:\503936\120\00289735.DOCX
CASE NO. 3:12-CV-_____
PAGE 6 OF 7

Case 3:12-cv-00253-HRH   Document 1   Filed 12/31/12   Page 6 of 7

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

3. The award of costs, attorneys' fees and interest as permitted by law; and

4. An order awarding such other and further relief as the Court deems just and proper.

DATED this 31st day of December, 2012.

        BIRCH HORTON BITTNER & CHEROT
        Attorneys for Plaintiff NORTHWEST COMPANY
        (INTERNATIONAL), INC.

        By: /s/ David Karl Gross
        Timothy J. Petumenos, ABA #7611147
        David Karl Gross, ABA #9611065
        1127 West Seventh Avenue
        Anchorage, AK 99501
        Telephone: 907.276.1550
        Facsimile: 907.276.3680
        Email: dgross@bhb.com

BIRCH HORTON BITTNER & CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3301
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

NORTHWEST COMPANY V. HCC LIFE INSURANCE     CASE NO. 3:12-CV-_____
COMPLAINT     PAGE 7 OF 7
F:\503936\120\00289735.DOCX

Case 3:12-cv-00253-HRH   Document 1   Filed 12/31/12   Page 7 of 7